**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 23-2998

_____

MICHAEL JOHN SHELIGA,
                                        Appellant

v.

BOROUGH OF WINDBER;
BRIAN MILLER, Windber Borough Police Officer;
DANIEL SCHRADER, Former Windber Borough Police Officer

_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Civil Action No. 3:23-cv-00139)
District Judge: Honorable Kim R. Gibson

_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
on December 11, 2024

Before: BIBAS, FREEMAN, and NYGAARD, <u>Circuit Judges</u>

(Opinion filed: December 12, 2024)

_____

---

OPINION[*]

---

PER CURIAM

In June 2023, Michael Sheliga filed suit against Windber Borough (in Somerset County, Pennsylvania); Brian Miller, a Windber Borough police officer; and Daniel Schrader, a former Windber Borough police officer, based on four separate incidents, the first three in December 2022, and the remaining one in June 2019. He alleged that an Officer Balderas threated him with arrest for canvassing door to door without having obtained a permit required by a Windber Borough ordinance; that Miller threatened to arrest him for disorderly conduct for going door to door; that Miller threatened to arrest him if he further criticized Windber Borough; and that he was detained and later cited by an Officer Schrader when he spoke critically of the officer. The defendants moved to dismiss the complaint.

While the motion to dismiss was pending, Sheliga filed a "Motion for a Temporary Restraining Order ['TRO'] and Preliminary Injunction ['PI']," which related to the first two claims in his complaint. ECF No. 15. He sought injunctive relief against Windber Borough and Miller "in order to engage in political speech with potential voters, including speech about the upcoming Windber Borough Municipal Elections while door to door canvassing." *Id.* at 1; *see also* ECF Nos. 15-2, 18 (describing the desire to engage in "political speech in Windber Borough including speech about the November 7th 2023 election and

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

the Windber Borough town council races"). He wished to be able to engage in that conduct "without Officer Miller arresting [him], and without Corporal Balderas arresting or citing [him] for not seeking the prior permission of Windber Borough." ECF No. 18 at 2. Related to both claims, he argued that Windber Borough clearly cannot require a permit or prior permission under *Watchtower Bible & Tract Society of New York, Inc. v. Village of Stratton*, 536 U.S. 150 (2002), and that he cannot be arrested for door-to-door canvassing. The defendants opposed the motion.

The District Court held a hearing on the motion. Testifying were Sheliga, Miller, Balderas, the Windber Borough Chief of Police, two people who had called the police about Sheliga's activities, and another person who had spoken with Miller about Sheliga repeatedly coming to her door. The District Court also viewed video footage of Sheliga's interactions with the Windber Borough police.

After the hearing, at which Balderas admitted both that he had told Sheliga that he needed a permit to go door to door and that he was mistaken about that, and at which the Chief of Police testified that there is no ordinance or policy that an individual must obtain such a permit, Sheliga stated that he was not "advocat[ing] for a TRO (or PI)" relating to any ordinance requirement because he "fe[lt] it more likely than not that agents of Windber Borough … were simply wrong when they informed [him] of a Borough ordinance." ECF No. 26 at 1.

The District Court, treating the motion as seeking a preliminary injunction, denied it "without prejudice," based on "reasons set forth in [an] accompanying [m]emorandum." ECF No. 31 at 32. Given the testimony at the hearing about the absence of an ordinance

regulating door-to-door canvassing and Sheliga's statement that he was not pursuing an injunction related to such an ordinance, the District Court denied as moot Sheliga's request relating to Windber Borough's alleged ordinance. Considering Sheliga's request based on Miller's threats to arrest him, the District Court ruled that Sheliga failed to show a likelihood of substantial and immediate irreparable harm. Additionally, the District Court stated that, "[a]ssuming, *arguendo*, that Sheliga has shown that he will suffer irreparable harm without a preliminary injunction, the Court also concludes that the principles of comity counsel in favor of denying Sheliga's motion under *Younger v. Harris*, 401 U.S. 37 (1971)."[1] ECF No. 31 at 22. Sheliga appeals.[2]

The first question is whether we have jurisdiction over this appeal. In his motion and during the District Court hearing, Sheliga stated that he sought a TRO, and an order denying a request for a TRO is not appealable. *See Hope v. Warden York Cnty. Prison*, 956 F.3d 156, 159 (3d Cir. 2020); *Louis Vuitton v. White*, 945 F.2d 569, 573 (3d Cir. 1991). However, we can look "beyond terminology" to the actual effect of the order sought to determine whether a motion is better construed as requesting a TRO or a preliminary injunction. *In re Arthur Treachers Franchisee Litig.*, 689 F.2d 1150, 1155 n.7 (3d Cir. 1982) (quotation marks omitted). And we conclude that what Sheliga sought in fact was a preliminary injunction. A TRO is limited in duration and may be issued without notice to the other

---

[1] The District Court's alternative holding was based on events that occurred after Sheliga's interactions with Miller and Balderas. The Police Chief arrested him for disorderly conduct when a resident called about Sheliga pounding on doors, and Sheliga was later charged with harassment relating to the same incident during a preliminary hearing in state court.

[2] He also asks to submit video exhibits played during the District Court hearing.

party. *Id.* at 1153; *see also* Fed. R. Civ. P. 65(b). Sheliga instead sought an order that was "designed to accord or protect some or all of the substantive relief sought by the complaint in more than a [temporary] fashion." *In re Pressman-Gutman Co., Inc.*, 459 F.3d 383, 392 (3d Cir. 2006) (alteration in original) (citation and internal quotation marks omitted). Accordingly, Sheliga presented a motion for a preliminary injunction, the denial of which we can ordinarily review under 28 U.S.C. § 1292(a)(1) "for an abuse of discretion, an error of law, or a clear mistake in the consideration of proof." *Kos Pharms., Inc. v. Andrx Corp.*, 369 F.3d 700, 708 (3d Cir. 2004) (internal quotations omitted).

We cannot, however, review all of the order denying relief in this case. As we noted, Sheliga sought, inter alia, relief relating to canvassing door to door before the November 2023 election to discuss issues relevant to that event. But any request for injunctive relief relating to that past election is moot, so we must dismiss this appeal to the extent Sheliga challenges the ruling as it relates to that request. *See Blanciak v. Allegheny Ludlum Corp.*, 77 F.3d 690, 698–99 (3d Cir. 1996) (noting that "[i]f developments occur during the course of adjudication that . . . prevent a court from being able to grant the requested relief, the case must be dismissed as moot"). We also do not consider issues that Sheliga chooses not to pursue or fails to raise. *See* 3d Cir. Doc. No. 15-2 at 14 (explaining that he does not contest the resolution of the claim against Balderas); *see also M.S. ex rel. Hall v. Susquehanna Twp. Sch. Dist.*, 969 F.3d 120, 124 n.2 (3d Cir. 2020) (explaining that a party forfeits any argument that he does not raise in his opening brief).

Sheliga focuses only on the claim against Miller, asserting that he was (and is) entitled to injunctive relief against him. But, as to that claim, Sheliga did not demonstrate that he

5

was entitled to a preliminary injunction. "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Upon review, we agree with the District Court that Miller did not show that he is likely to suffer harm in the absence of injunctive relief. In particular, he did not show that he faced a real and immediate threat that he would be arrested merely for engaging in door-to-door canvassing. In arguing the contrary, Sheliga focuses on Miller's telling him "You can't be knocking on doors." *See, e.g.*, 3d Cir. Doc. Nos. 15-2 at 23, 26-1 at 28. But, in the context of the testimony and video evidence, which we have reviewed,[3] we do not believe that Sheliga risks arrest by merely knocking on doors and discussing his views. Like the District Court, we come to that conclusion regarding the likelihood of harm after considering how and why Miller interacted with Sheliga (including, inter alia, the evidence that Miller was responding to police reports that Sheliga was scaring others and acting disorderly and that Miller made statements to Sheliga because of the complaints from others); Sheliga's admission that no one had told him that he would be arrested strictly for engaging in speech about the then-upcoming election; and Miller's, Balderas's, and the Chief of Police's testimony that they never told him that he would be arrested for door-to-door canvassing about the election.

---

[3] We grant Sheliga's motion, supported by evidence from opposing counsel, to accept and review the videos that were played at during the hearing in the District Court that do not appear to be available through the District Court docket.

Accordingly, to the extent that we have jurisdiction over this appeal, we will affirm the District Court's order. We will otherwise dismiss this appeal. Sheliga's requests for injunctive and other relief (except for the request that we consider the videos, *see supra* n.3) are denied.